IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

| | | |
|---|---|---|
| **CRYSTAL BALLINGER,** | * | |
| Plaintiff, | * | |
| v. | * | Case No.: GJH-15-3769 |
| | * | |
| **BOARD OF EDUCATION FOR PRINCE GEORGE'S COUNTY,** | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Plaintiff Crystal Ballinger sued Defendant Board of Education of Prince George's County, Maryland, alleging that she had been unlawfully sexually harassed and retaliated against in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII") and Title IX of the Education Amendments of 1972, 20 U.S.C. 1681, *et seq.* ("Title IX"). ECF No. 1. Presently pending before the Court is Defendant's Motion for Summary Judgment, ECF No. 28. In support of its Motion, Defendant attaches the affidavit of Defendant's Equal Employment Opportunity Advisor, Amana T. Simmons, who investigated Plaintiff's allegations, ECF No. 28-6; Defendant's relevant administrative policies, which it relied on, ECF No. 28-2, ECF No. 28-3, ECF No. 28-4, ECF No. 28-6 at 5–13; correspondence between Plaintiff and Defendant regarding the alleged harassment, ECF No. 28-6 at 14–18, 35–57, ECF No. 28-5; and, a number of statements made by individuals who witnessed the alleged harassment, ECF No. 28-6 at 20–34. In opposition, Plaintiff attaches her own affidavit, ECF No. 29-1; another teacher's affidavit, ECF No. 29-2; and, the same witness statements that were attached to Defendant's

Motion, ECF No. 29-3. The Court held a motions hearing on December 7, 2017. ECF No. 34. For the following reasons, Defendant's Motion for Summary Judgment is granted.

I.    **BACKGROUND**[1]

Plaintiff is an employee of Prince George's County Public Schools, and in 2014 was working at Oxon Hill Middle School ("OHMS"). ECF No. 29-1 ¶¶ 1–2 (Plaintiff's Affidavit).[2] On September 19, 2014, Plaintiff attended an OHMS staff retreat in Oakland, Maryland. *Id.* ¶ 4. Jeffrey Pearson, a math teacher at OHMS, was also at the retreat. *Id.* ¶ 8. That evening, Plaintiff attended a party with other OHMS staff, where alcohol was being consumed, loud music was playing, and staff members were dancing. *Id.* ¶ 14. Based on Plaintiff's recollection, Pearson's recollection and witness statements, it is clear that at some point in the evening Plaintiff and Pearson fell to the ground together. *Id.* ¶ 14; *e.g.*, ECF No. 28-6 at 20 (witness statement). The exact cause of their falling and subsequent conduct is disputed. Plaintiff recalls that at approximately 10:30 PM, Pearson "grabbed [her] waist," and that she pulled away and informed him that she did not want to dance. ECF No. 29-1 ¶ 16–17. She recalls that she was "slammed into the floor," and that Pearson was "on top of [her] and proceeded to give forceful thrusts into [her] pelvic region." ECF No. 28-6 at 16 (Plaintiff's "Statement of the Facts"). Pearson, on the other hand, recalls that he and Plaintiff began "dancing together" when she walked past him, and that they began dancing "closer and closer" with "no sign of hesitation" from Plaintiff. *Id.* at 34 (Pearson's Statement). He recalls that they "danced lower till we fell to the floor" at which point he "began to grind on top of her for a few minutes." *Id.* Multiple witnesses remember Plaintiff

---

[1] The facts relied on herein are either undisputed or viewed in the light most favorable to the Plaintiff, and are drawn from the evidence submitted by both parties.
[2] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

2

making a joke that Pearson "could [have] bought [her] dinner first" once they stood back up. *Id.* at 22; *see also id.* at 20, 24.

Plaintiff returned to the building where the female employees were staying and asked another employee to call OHMS Principal Wendell Coleman. *Id.* at 17. When Coleman arrived, Plaintiff explained what had occurred and informed Coleman that her back was injured; Coleman asked if Plaintiff wanted to go to the hospital, which she declined. *Id.* Coleman then stated that he was going to "discuss the events" with Pearson, and left the building. *Id.* Coleman returned and told Plaintiff that he would discuss the situation with Pearson the next morning. *Id.* at 38. The next morning, Coleman met with Pearson, Plaintiff and two other staff members about the incident the night before. *Id.* Plaintiff expressed her discomfort and embarrassment regarding the incident; Pearson explained that he "mean[t] no disrespect to you." *Id.* Pearson said that "he would like to apologize to the entire retreat for his misconduct," *id.*, and during a staff breakfast that morning, Pearson "apologized for his actions to the whole staff." *Id.* at 28. Plaintiff subsequently asked Coleman to send Pearson home; although he refused to do so, Coleman asked Pearson to stay in his house for the remainder of the retreat. *Id.* at 39. There is no evidence that Pearson sexually harassed Plaintiff after this incident.

On September 22, 2014, Plaintiff filed a Discrimination or Harassment Incident Report with the Prince George's Public School Equity Assurance office. *Id.* at 14–15. Prince George's County Public Schools EEO Advisor, Amana T. Simmons, corresponded with Principal Coleman that day and arranged to interview numerous witnesses regarding the incident; these interviews occurred the next day, on September 23, 2014. *Id.* at 2–3. During her investigation, Simmons instructed Pearson to "avoid contact with [Plaintiff] by not venturing into the area of the school containing [her] designated work space." *Id.* at 40. Simmons ultimately issued a Letter of

3

Determination, which found that both Plaintiff and Pearson "engaged in inappropriate conduct," that the "initial interaction between [Plaintiff] and Mr. Pearson dancing was consensual," and "recommended that both parties receive a Memorandum of Counsel respecting such behavior." *Id.* at 46. No such Memorandum of Counsel was ever issued. Following the incident, Plaintiff applied for "Assault Leave"; however, in a letter dated October 23, 2014, Defendant denied her request because she had "failed to consult with a physician or emergency room at a hospital within twenty-four (24) hours of the alleged complaint," as required under Administrative Procedure 4154. ECF No. 28-5 at 1; *see also* ECF No. 28-3 (Administrative Procedure 4154).

Plaintiff also presents evidence that the September 2014 incident was not the first time that Pearson engaged in sexually inappropriate behavior at a work event, and that OHMS Vice Principal Ashanti Foster witnessed the prior alleged misconduct. In her affidavit, Plaintiff recalls that on March 17, 2014, she was in Foster's office with Pearson. ECF No. 29-1 at 3. Plaintiff recalls Pearson inviting Plaintiff to "feel free to touch me at any time . . . you know where I am." *Id.* at 4. Plaintiff also attaches the affidavit of Elizabeth Tedder, a former employee of OHMS, who recalls another incident involving Pearson behaving inappropriately towards female co-workers at an OHMS event. Tedder recalls that at an OHMS staff event on March 17, 2014, Pearson approached her while she was in a hot tub, and sat next to her. ECF No. 29-2 ¶ 5. He made sexual advances towards her, made sexual comments about her body and invited her to his room; Tedder asked him to stop. *Id.* ¶¶ 6–7. At one point, Pearson touched Tedder's thigh and buttocks. *Id.* ¶ 9. Later that evening, Pearson continued to make sexual advances and comments, and again asked Tedder to go to his room. *Id.* ¶ 13. Tedder felt uncomfortable, and moved next to Vice Principal Ashanti Foster. *Id.* ¶ 16. Pearson began dancing in front of Tedder and Vice

Principal Foster, eventually attempting to give Foster a lap dance. *Id.* ¶¶ 17–21. Tedder and Foster tried to avoid Pearson, and Foster told him to return to his room. *Id.* ¶ 23.

Following her denial of assault leave, and the issuance of Defendant's Letter of Determination, Plaintiff filed a Complaint against Defendant in this Court on December 10, 2015. ECF No. 1. Plaintiff alleges that (1) she was sexually harassed, and that Defendant is liable for the harassment under Title VII and Title IX because "[s]chool officials condoned Mr. Pearson's harassing behavior and failed to take corrective action," ECF No. 1 at 10 (Count I), and (2) Defendant retaliated against her in violation of Title VII and Title IX after she filed a Discrimination or Harassment Incident Report. *Id.* at 12 (Count II). On April 3, 2017, Defendant submitted the pending Motion for Summary Judgment, ECF No. 28, and the Court heard arguments from the parties on December 7, 2017, ECF No. 34.

## II. STANDARD OF REVIEW

"Under [Federal Rule of Civil Procedure] 56(c), summary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548 (1986) (quoting Fed. R. Civ. P. 56(c)). The party moving for summary judgment bears the burden of demonstrating that no genuine dispute exists as to material facts. *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987). If the moving party demonstrates that there is no evidence to support the non-moving party's case, the burden shifts to the non-moving party to identify specific facts showing that there is a genuine issue for trial. *See Celotex*, 477 U.S. at 322–23. Importantly, at the summary judgment stage, it is not the Court's function to weigh the evidence but simply to decide if there is a genuine issue for trial. *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505 (1986). A dispute of material fact is genuine if the conflicting evidence creates "fair doubt," *Cox v. Cnty. Of Prince William*, 249 F.3d 295, 299 (4th Cir. 2001), such that "a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

When ruling on a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. Nevertheless, a "mere scintilla of proof" is not enough to defeat a motion for summary judgment. *Peters v. Jenney*, 327 F.3d 307, 314 (4th Cir. 2003) (citing *Anderson*, 477 U.S. at 252). To defeat the motion, the party opposing summary judgment must submit evidentiary materials showing facts on the basis of which the finder of fact could reasonably decide the case in its favor. *Anderson*, 477 U.S. at 252. If a party fails to make a showing sufficient to establish the existence of an essential element on which that party will bear the burden of proof at trial, summary judgment is proper. *Id.*

## III. DISCUSSION

The Court first considers whether Defendant is entitled to summary judgment on Plaintiff's sexual harassment claim, and then turns to whether it is entitled to summary judgment on her retaliation claim.

### A. Sexual Harassment

Title VII makes it illegal for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a). "Courts have long endorsed and adopted the EEOC's interpretation that sexual harassment is a form of prohibited sex discrimination." *Bruce*

v. *Fair Collections & Outsourcing, Inc.*, No. 13–3200, 2014 WL 3052477, at *3 (D. Md. June 30, 2014) (citing *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65–66 (1986)). One way that a plaintiff can bring a claim under Title VII is if they can show that they were subjected to "a hostile work environment due to severe or pervasive sexual harassment." *See Pitter v. Cmty. Imaging Partners, Inc.*, 735 F.Supp.2d 379, 390 (D.Md.2010). "To establish a Title VII claim for sexual harassment in the workplace, a female plaintiff must prove that the offending conduct (1) was unwelcome, (2) was based on her sex, (3) was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive work environment, and (4) was imputable to her employer." *Ocheltree v. Scollon Prods., Inc.*, 335 F.3d 325, 331 (4th Cir.2003). The Defendant challenges only the Plaintiff's ability to establish the fourth element in this case. Regarding that element, "[i]n a case where an employee is sexually harassed by a coworker, the employer may be liable in negligence if it knew or should have known about the harassment and failed to take effective action to stop it." *Id.* at 333-34; *see also Harris v. Mayor and City Council of Baltimore*, 797 F. Supp. 2d 671, 680 (D. Md. 2011) (finding that where a plaintiff alleges that she has been harassed by a co-worker, rather than a supervisor, the employer can be liable only "for their own negligence in failing, after actual or constructive knowledge, to take prompt and adequate action to stop it.").

Plaintiff argues that Defendant is liable under Title VII and Title IX for the alleged sexual harassment by her co-worker for two reasons.[3] First, Plaintiff argues that Defendant's sexual harassment policy is insufficient, and that Defendant is therefore liable for the sexual harassment that Plaintiff suffered. ECF No. 29 at 7. Second, Plaintiff argues that Defendant directly or

---

[3] Courts "look to case law interpreting Title VII of the Civil Rights Act of 1964 for guidance in evaluating a claim brought under Title IX." *Jennings v. Univ. of N. Carolina*, 482 F.3d 686, 695 (4th Cir. 2007). The analysis contained herein applies to Plaintiff's claims under Title VII and Title IX.

constructively had knowledge of Pearson's past misconduct of sexual harassment yet failed to take appropriate corrective action. *Id.* The Court addresses these in turn.

### i. Adequacy of Sexual Harassment Policy

Plaintiff contends that "PGCPS's Administrative Policy 4170 is defective because it does not require management level employees who have knowledge of an incident of sexual harassment to report that information to those who are in a position to take appropriate action." ECF No. 29 at 7. Plaintiff also contends that under Defendant's policy, "management level employees did not receive regular sexual harassment training geared towards employees." *Id.* Plaintiff cites to a number of cases supporting the notion that appropriate polices are required, but does not cite to any evidence on the record demonstrating that Defendant's policies are insufficient. ECF No. 29 at 7–8.

Defendant responds that Administrative Policy 4170 requires that "employees who believe they have experienced harassment or discrimination should immediately report the matter." ECF No. 30 at 6. Furthermore, Defendant argues that, in fact, "the administrators of [OHMS] received training regarding sexual harassment annually in the several years leading up to the retreat at issue in 2014." *Id.* Defendant attaches the affidavit of Wendell Coleman, the Principal of OHMS, who declares that "[e]ach year between the 2009-2010 school year and the 2013-2014 school year, I provided training to all of the teachers and staff of OHMS, including administrators, regarding discrimination and harassment, including sexual harassment." ECF No. 30-1 ¶ 4.

While institutions must have sufficient policies in place to prevent against sexual harassment, *see Ocheltree v. Scollon Prods., Inc.*, 335 F.3d 325, 334 (4th Cir. 2003) ("[A]n employer may be charged with constructive knowledge of coworker harassment when it fails to

8

provide reasonable procedures for victims to register complaints"), there is no genuine dispute of fact regarding OHMS's policies. OHMS implemented a policy that required employees to report sexual harassment, and OHMS provided training on its harassment and discrimination policies on an annual basis. *Cf. Ocheltree* 335 F.3d at 334 ("The first problem with Scollon Productions' complaint procedure is that, by the company's own admission, it fails to place any duty on supervisors to report incidents of sexual harassment to their superiors"). Plaintiff has not presented any evidence that creates a genuine dispute of fact on this point. As such, Defendant is entitled to summary judgment on Plaintiff's argument that Defendant did not implement a sufficient sexual harassment policy or training program.

### ii. Imputation of Knowledge of Harassment

Likewise, Defendant is entitled to summary judgment on Plaintiff's other theory of liability for sexual harassment under Title VII and Title IX: that Defendant had actual or constructive knowledge of Pearson's prior misconduct, and failed to take corrective actions.[4] Plaintiff asserts that "[m]anagement level employees of the Defendant, specifically Vice Principal Ashanti Foster, knew as early as March 2014 that Mr. Pearson engaged in inappropriate sexual behavior in the presence of female Oxon Hill Middle School staff members . . . Mr. Pearson's personnel records indicate that no remedial action was taken against Mr. Pearson prior to the incident with Ms. Ballinger." ECF No. 29 at 7.

The crux of Plaintiff's argument is that, because Foster, as Vice Principal, knew about the alleged prior sexual harassment, Defendant constructively had knowledge of the prior sexual harassment. While an "employer may be liable in negligence if it knew or should have known

---

[4] There is no evidence in the record that there was any sexual harassment of Plaintiff after the incident with her co-worker on September 19, 2014; thus, Plaintiff cannot succeed by arguing that Defendant's response to that incident was insufficient. Plaintiff's claim can only succeed if Defendant was on notice prior to the alleged co-worker harassment.

9

about the harassment and failed to take effective action to stop it," *Ocheltree*, 335 F.3d at 333–34, the Fourth Circuit has previously held that knowledge by a school principal of harassment is not imputed to the school district. *See Baynard v. Malone*, 268 F.3d 228, 239 (4th Cir. 2001). In *Baynard v. Malone*, a student was allegedly sexually harassed by a teacher and brought a Title IX claim against a number of parties, including the school board. The Fourth Circuit reasoned that "a school district can be liable for teacher-student sexual harassment under Title IX only if a school official who had actual knowledge of the abuse was invested by the school board with the duty to supervise the employee and the power to take action that would end such abuse and failed to do so." 268 F. 3d 228 at 237. The Fourth Circuit went on to reason that:

> We agree with the district court that the principal of a public school in Virginia cannot be considered the functional equivalent of the school district. . . . Critically absent from the scope of a principal's authority . . . are the powers that would make a principal the proxy of the school district: the power to hire, fire, transfer, or suspend teachers. In Virginia, those powers are reserved exclusively to the school district; a principal may only make recommendations regarding such matters. . . . Simply put, Virginia has made an explicit policy decision that school principals do not exercise the powers of an employer on behalf of the school district.

*Id.* at 239. *See also id.* at 237 ("[A] school district can be liable for teacher-student sexual harassment under Title IX only if a school official who had actual knowledge of the abuse was invested by the school board with the duty to supervise the employee and the power to take action that would end such abuse and failed to do so.").

As with Virginia, Maryland also places the power to hire/fire teachers exclusively with the board of education. Maryland Educ. Code § 6-202 (2016) provides that "[o]n the recommendation of the county superintendent, a county board may suspend or dismiss a teacher." (available at https://law.justia.com/codes/maryland/2016/education/division-ii/title-6/subtitle-2/section-6-202/). Therefore, Vice Principal Foster did not have the authority to "hire, fire, transfer, or suspend [Pearson]," and, as a result, her alleged knowledge of Pearson's prior

10

misconduct cannot be imputed to Defendant. *See Jennings v. Univ. of N. Carolina*, 482 F.3d 686, 700 (4th Cir. 2007) ("An institution can be held liable for a Title IX violation only if an official who has authority to address the alleged discrimination and to institute corrective measures has actual knowledge of discrimination in the [institution's] programs and fails adequately to respond or displays deliberate indifference to discrimination." (internal quotations omitted)).[5] As such, Defendant is entitled to summary judgment on Plaintiff's sexual harassment claim.

### B. Retaliation

Defendant is also entitled to summary judgment on Plaintiff's retaliation claim. Plaintiff claims that Defendant retaliated against her for reporting the sexual harassment that she suffered. ECF No. 1 at 12. Specifically, Plaintiff contends that Defendant retaliated against her by recommending that she be issued a Memorandum of Counsel finding that Plaintiff and Pearson both engaged in inappropriate behavior.[6] *Id.* Defendant counters that "the undisputed evidence shows that Plaintiff did not suffer any adverse employment action." ECF No. 28-1 at 13.

Title VII prohibits employment discrimination based on "race, color, religion, sex, or national origin," 42 U.S.C. § 2000e-2(a), and its antiretaliation provision serves to "prevent[ ] an employer from interfering (through retaliation) with an employee's efforts to secure or advance enforcement of the Act's basic guarantees." *Burlington N. Santa Fe Ry. Co. v. White*, 548 U.S. 53, 63 (2006); 42 U.S.C. § 2000e-3(a). Employees are protected "not from all retaliation, but

---

[5] In should be noted that in *Baynard*, a teacher harassed a student, whereas here a teacher harassed another teacher. Still, the reasoning of *Baynard* applies, as in both cases the alleged offending individual is an employee of the school. While another judge in this District distinguished *Baynard* in *Doe v. Board of Educ. of Prince George's County*, 888 F. Supp. 2d 659 (D. Md. 2012), the facts here are more similar to those in *Baynard* than in *Doe*. There, a student harassed another student, and the Court reasoned that the employees who had notice of the harassment had the power to remedy the harassment by moving one of the students to a separate class; as such, the employees' knowledge was imputed to the school board. Here, as discussed below, Vice Principal Foster did not have the power to transfer or fire Pearson or Defendant, and her knowledge cannot be imputed to the school board.

[6] Plaintiff also initially argued that Defendant retaliated against her by denying her application for assault leave, but does not reassert this argument in her Opposition to Defendant's Motion for Summary Judgment. To the extent the issue remains before the Court, summary judgment in favor of the Defendant is appropriate because the undisputed evidence is that Plaintiff did not consult with a physician as required by policy. ECF No. 28-5 at 1; ECF No. 28-3. Thus, no reasonably jury could find that the denial of assault leave was in retaliation for her complaint.

from retaliation that produces an injury or harm." *Burlington*, 548 U.S. at 67. To demonstrate a claim for retaliation, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it might well have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* (internal quotations omitted). "Materiality is an objective determination, meaning that acts that carry a significant risk of humiliation, damage to reputation, and a concomitant harm to future employment prospects may be considered adverse actions, although a mere inconvenience or an alteration of job responsibilities will not suffice." *Fordyce v. Prince George's Cty.*, 43 F. Supp. 3d 537, 552 (D. Md. 2014) (citation and internal quotation marks omitted).

Plaintiff argues that Defendant is not entitled to summary judgment on her retaliation claim because Defendant "took a materially adverse action against" Plaintiff when Defendant issued its Letter of Determination finding fault in both her and Pearson's actions. ECF No. 29. Plaintiff claims that the Letter was not supported by witness statements, and that the "false accusation that [Plaintiff] consented to Mr. Pearson's sexual assault and its threat to discipline her amounts to an adverse action." ECF No. 29 at 9–10. Defendant responds that Plaintiff was never actually reprimanded, and points to a number of admissions that Plaintiff provided following discovery; including, Defendant took no disciplinary action against Plaintiff, Plaintiff's salary did not change in response to her complaint, and Plaintiff's benefits did not change in response to her complaint. ECF No. 30 at 8.

While Plaintiff alleges that the Letter of Determination "traumatized" her and "dissuaded [her] from pursuing her sexual harassment complaint," the issuance of the Letter of Determination does not amount to a "materially adverse action." As Defendant points out, no reprimand was ever actually issued to Plaintiff; rather, the Letter of Determination was provided

12

to Plaintiff as a summary of Defendant's findings from their investigation into the alleged harassment. Thus, Plaintiff's only true complaint is that she disagrees with the findings of the Letter of Determination, but disagreement with the outcome of an investigation is not sufficient to establish a claim of retaliation where no adverse action was taken. Thus, summary judgment is appropriate.

IV. **CONCLUSION**

For the foregoing reasons, Defendant's Motion for Summary Judgment, ECF No. 28, is hereby granted. A separate Order shall issue.

Date: December 29, 2017

GEORGE J. HAZEL
United States District Judge